Anthony CAIAFA, on behalf of himself and All others similarly situated, et al., Plaintiffs,

v.

SEA CONTAINERS LTD., James B. Sherwood, Daniel J. O'Sullivan and Ian C. Durant, et al., Defendants.

Nos. 06 Civ. 2565(RMB), 06 Civ. 2670(RMB), 06 Civ. 2744(RMB), 06 Civ. 2776(RMB), 06 Civ. 2909(RMB), 06 Civ. 3099(RMB) 06 Civ. 3563(RMB), 06 Civ. 5655(RMB).

United States District Court, S.D. New York.

Sept. 25, 2007.

**402**

## DECISION AND ORDER

RICHARD M. BERMAN, District Judge.

### I. Introduction

This consolidated securities law action was initiated on March 31, 2006, by Beverlie Wissner, Rita and Mark Winczewski, Helane Sue Tartikoff, Dave Tartikoff Services, Inc., and Scott Scheurer ("Named Plaintiffs") on behalf of a putative class of plaintiffs ("Plaintiffs" or "Class") who purchased the securities of Sea Containers Ltd. ("SCL" or "Sea Containers" or "Company"), a Bermuda corporation, during the period February 23, 2004 through March 24, 2006 ("Class Period").[1] Plaintiffs filed a 70–page Consolidated Amended Com-

---

1. In a Decision and Order, dated August 14, 2006, "seven related securities fraud actions filed against Sea Containers" were consolidated pursuant to Federal Rule of Civil Procedure 42(a), "Beverlie Wissner [was] appointed lead plaintiff" pursuant to 15 U.S.C. §§ 78u–4(a)(3)(B), "and the Law Offices of Bernard M. Gross [was] appointed lead counsel" pursuant to 15 U.S.C. §§ 78u–4(a)(3)(B)(iv). (Decision and Order, dated Aug. 14, 2006.)

plaint on October 4, 2006 ("Complaint"), asserting claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, as amended ("Securities Act Claims"), and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended ("Exchange Act Claims"), against SCL and certain of its officers, including James H. Sherwood ("Sherwood"), Daniel J. O'Sullivan ("O'Sullivan"), and Ian C. Durant ("Durant") (the "Individual Defendants") (collectively with SCL, "Defendants").[2] Plaintiffs allege, among other things, that Defendants materially misstated SCL's financial statements during the Class Period. (*See* Compl. ¶ ("The value of Sea Containers' ferry and container assets was materially impaired throughout the Class Period and such material impairments should have been recognized and recorded in much greater amounts during the Class Period.").)

On December 20, 2006, the Individual Defendants jointly moved to dismiss the Complaint under Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."), arguing, among other things: (A) Plaintiffs lack standing to assert certain Securities Act Claims in Counts I and III; (B) the Securities Act Claims under Sections 11 and 12(a)(2) fail to "allege false or misleading statements in any offering material"; (C) the Exchange Act Claim under Section 10(b) fails to "plead with particularity any actionable misstatements or omissions" and fails to plead facts giving rise to a "strong inference of scienter"; and (D) the claims for "control person" liability under Section 15 of the Securities Act and Section 20(a) of the Exchange Act ("Control Person Claims") fail to "allege 'culpable participation' by any Individual Defendant."

(*See* Def. Mem.) On February 2, 2007, Plaintiffs filed a Memorandum of Law which opposes the motion to dismiss and requests "an opportunity to amend the Complaint" in the event of dismissal. (Plaintiffs' Memorandum of Law, dated February 2, 2007 ("Pl.Mem."), at 25 n. 16.) On February 23, 2007, the Individual Defendants filed a Reply Memorandum of Law ("Def.Reply"). The parties waived oral argument.

**For the reasons set forth below, the Court grants the Individual Defendants' joint motion to dismiss without prejudice.**

## II. Background

For the purposes of this motion, the allegations of the Complaint are taken as true. *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998).

During the Class Period, SCL was engaged in four main businesses: (1) passenger and freight ferry services in, among other places, the Baltic Sea, the English Channel, and New York harbor; (2) passenger rail transport between London and Scotland; (3) ownership and leasing of large cargo-shipping containers, both independently and through GE SeaCo., a joint venture with General Electric Capital Corp. ("GE Capital"); and (4) operation of hotels, restaurants, tourist trains, and river cruise ships through Orient–Express Hotels, Ltd. ("OEH"). (*See* Compl. ¶ 11.)

During the Class Period, SCL conducted two public offerings of SCL common stock (*i.e.,* on February 23, 2004 covering 2.2 million shares and on December 28, 2004 covering 2.4 million shares) and one public offering of debt (*i.e.,* on May 4, 2004 covering $103 million in 10½% Senior Notes due

---

2. The action is stayed as to SCL which filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on October

14, 2006. (*See* Defendants' Memorandum of Law, dated December 20, 2006 ("Def.Mem."), at 1 n. 1.)

in 2012 ("Notes")). (*See* Compl. ¶¶ 7–10, 23, 32, 46, 122, 128; Def. Mem. at 4 & n. 3, 11; Exs. A, B, and P; Pl. Mem. at 19.) [3]

In SCL's annual report on Form 10–K filed with the Securities and Exchange Commission ("SEC") for the calendar year 2004, SCL stated the following:

> In the course of preparing SCL's consolidated financial statements for the year ended December 31, 2004, SCL management concluded that SCL had insufficient personnel resources and technical accounting expertise within the accounting function to resolve and report in a timely manner non-routine or complex accounting matters in accordance with U.S. generally accepted accounting principles. As a result, procedures and documentation to review and analyze elements of the financial statements closing process and to prepare the consolidated financial statements had not reduced to a less than remote likelihood that a material misstatement in those financial statements would not be prevented or detected within a timely period in the normal course of the financial statement closing process.

(SCL 2004 SEC Form 10–K at 92; *see* Compl. ¶¶ 51, 99.) SCL's SEC Form 10–Q financial statements for the first three quarters of 2005 also stated that "SCL's disclosure controls and procedures were not effective." (Compl. ¶¶ 58, 65, 74.)

In a press release, dated November 3, 2005, SCL announced that it intended to restructure the Company by, among other things, selling certain ferry and container assets, resulting in a total "restructuring charge" to income of $157 million in the third and fourth quarters of 2005. (Compl. ¶ 71.) This figure included $99 million in "impairment charges" relating to the ferry business, $30 million in impairment charges relating to the container business, $26 million in cash expenses, and a $2 million impairment charge relating to computer systems. (*Id.*; Ex. I at 2.) "[T]he market reacted favorably to this announcement . . . ." (Compl. ¶ 72.) [4]

Sherwood was the founder, President, Chief Executive Officer ("CEO") and a Director of SCL from 1965 until his resignation as President and CEO on December 1, 2005 and as Director on March 20, 2006. (Compl. ¶ 12.) Sherwood was replaced as CEO in January 2006 by Robert MacKenzie ("MacKenzie"), who is not named as a Defendant. (Compl. ¶¶ 12, 89.) Durant became Vice President and Deputy Chief Financial Officer on June 1, 2004, Senior Vice President and Chief Financial Officer ("CFO") on January 1, 2005, and President and CEO from December 1, 2005 until January 4, 2006, when he reverted to CFO. (Compl. ¶ 13.) [5] O'Sullivan was Senior Vice President for Finance and CFO from June 1997 until he retired in December 2004. (Compl. ¶ 14.)

---

**3.** SCL also sold all of its shares in OEH common stock in registered public offerings in March and November of 2005. (Compl. ¶¶ 49, 57, 78.) In their motion papers, the parties also refer to an "April 15, 2004 Registration Statement for $150 million of senior notes due 2014." (Pl. Mem. at 22; Def. Reply at 2 n. 2; Ex. O (draft Registration Statement).)

**4.** SCL had incurred smaller impairment charges earlier in the Class Period, including a $16 million impairment charge reflected on SCL's 2003 Form 10–K ($6 million of which

related to refrigerated containers, Compl. ¶ 28), and a $2.9 million impairment charge reflected on SCL's 2004 Form 10–K relating to the discontinuance of the "Belfast–Troon" ferry service (Compl. ¶ 53). (See Pl. Mem. at 16.)

**5.** Plaintiffs withdrew the Securities Act Claims against Durant because he "did not sign any of the offering documents." (Pl. Mem. at 22 n. 13.) The Exchange Act Claims against Durant remain.

On March 24, 2006, the last day of the Class Period, SCL announced that it intended to "withdraw completely from the ferry business," resulting in an "impairment charge" to SCL's ferry assets of "approximately $415 million" as of December 31, 2005, pursuant to the Financial Accounting Standards Board's ("FASB") Statement of Financial Accounting Standard ("SFAS") No. 144. (Compl. ¶ 81 (quoting SCL Press Release, dated March 24, 2006 ("March 24, 2006 Press Release")).) SCL also announced that certain of its containers (that were "owned and managed by SCL separately and not part of GE SeaCo.") were "being held for sale at December 31, 2005," resulting in an SFAS 144 "impairment charge" of approximately $40 million. (Compl. ¶¶ 81, 102; March 24, 2006 Press Release.) "The expected loss on these [container] sales initiated an impairment review on the Company's entire container fleet in accordance with SFAS 144," resulting in an additional impairment charge on refrigerated containers (and goodwill) of approximately $45 million. (*Id.*) These charges included the $157 million charge announced on November 3, 2005. (Ex. J at 2–3.)

The March 24, 2006 Press Release also announced that SCL had found "errors in the accounting for the release of accumulated foreign currency reserves related to [SCL's] sale of OEH shares," which reduced by $10.3 million SCL's gains on the sale of OEH stock in March 2005, and resulted in a restatement of SCL's financial statements for the periods ending March 31, 2005, June 30, 2005, and September 30, 2005 (the "Accounting Error Restatement"). (Compl.¶¶ 63, 70, 79.) And, the March 24, 2006 Press Release announced that SCL "would miss the deadline for filing[ ] its 2005 annual report." (Compl.¶ 80.) The Company's stock dropped from $12.06 per share on March 23, 2006 to $7.45 per share on March 24, 2006. (Compl.¶ 80.)

On May 3, 2006, SCL announced that an arbitration panel had ruled against SCL, awarding GE Capital approximately $16.3 million with respect to "breaches of the services agreement by which SCL provided services to GE SeaCo." (Compl.¶ 84.) During an August 17, 2006 "conference call [with] the investor community," MacKenzie stated that he had "spent a lot of time on the 31st of December balance sheet ... and where the difficulty arises is certifying the previous years. I have a responsibility to go back and certify the ... previous four years." (Compl.¶ 89.) On October 2, 2006, SCL's stock price closed at $1.04 per share and the New York Stock Exchange suspended SCL from trading. (Compl.¶ 2.)

Based upon, among other things, interviews with five "anonymous" former employees of SCL ("Confidential Sources" ("CS") 1–5), the Complaint alleges that SCL's public statements during the Class Period were misleading because Defendants failed to disclose, among other things, the following:

a. The Accounting Error, *i.e.*, "errors in the accounting for the release of accumulated foreign currency reserves related to [SCL's] sale of OEH shares," which reduced by $10.3 million SCL's gains on the sale of OEH stock in March 2005.

b. The $500 Million Write-down, *i.e.*, that SCL's ferry assets "were impaired" and should have been "written down" earlier pursuant to SFAS 144; "negotiations for sales of ... two vessels had indicated their book value was in excess of market value"; "the Company's restructuring program was a farce"; "the ferry business has traded poorly for the past five years and been hit by extremely serious fuel increas-

es"; and "SCL had numerous containers ... whose values were impaired" and should have been "written down" earlier pursuant to SFAS 144.

c. Other Misrepresentations and Omissions, including that: SCL's internal accounting function lacked "sufficient personnel resources and technical accounting expertise" to comply with Generally Accepted Accounting Principles ("GAAP") adopted by the FASB; and "SCL's relationship with ... GE Capital, was strained and threatened such that either the revenue from the GE SeaCo. joint venture should not have been recorded on SCL's books or reflected on SCL's financial statements, and if reflected, a reserve should have been provided against receivables for estimated losses."

(Compl.¶¶ 23–89.)

On October 14, 2006, SCL filed for bankruptcy protection in the United States Bankruptcy Court for the District of Delaware (Case No. 06–11156), without having filed with the SEC its Form 10–K for 2005 or and without having issued restated financials for any (earlier) periods. (Compl. ¶ 2; Def. Mem. at 1 n. 1.)

### III. Legal Standard

■■■ Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. Art. III, § 2. "The burden to establish standing rests on the party asserting its existence. At the pleading stage, the plaintiff bears the burden of clearly ... alleg[ing] facts demonstrating that [it] is a proper party to invoke judicial resolution of the dispute." *In re AOL Time Warner, Inc. Secs. and "ERISA" Litig.*, 381 F.Supp.2d 192, 245 (S.D.N.Y. 2004) (citations and internal quotation marks omitted).

■■ "In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, — U.S. —, —, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007). "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (citation omitted). At the same time, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." *Bell Atlantic v. Twombly*, — U.S. —, — – —, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (citation and internal quotations omitted); *accord ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n. 2 (2d Cir.2007) (applying *Twombly* to securities fraud action). "[P]laintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comms.*, 493 F.3d at 98 (quoting *Twombly*, 127 S.Ct. at 1965); *see Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007) (*Twombly* "requi[res] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*").

■■■ A Rule 10b–5 plaintiff must plead fraud with particularity so that defendants have "a reasonable opportunity to answer the complaint and ... adequate information to frame a response." *Ryan v. Hunton & Williams*, 2000 WL 1375265, at *6 (E.D.N.Y. Sept. 20, 2000) (citation omit-

ted); Fed.R.Civ.P. 9(b). "A securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Comms.*, 493 F.3d at 99.

## IV. Analysis

### (A) Standing

The Individual Defendants argue, among other things, that: "Plaintiffs make no attempt to allege that any named plaintiff purchased SCL Class A common shares directly in the challenged offerings (February 23, 2004 or December 28, 2004) or in a market containing only shares issued pursuant to the challenged offering" (Def. Mem. at 11); and "only investors who purchased the [Notes] *in* the public offering have standing to sue under Section 12(a) (2)." (Def. Mem. at 10–12).[6] Plaintiffs counter that, among other things, the standing question is "fact-intensive," "inappropriate for dismissal at the pleading stage," and "more appropriately addressed at either the class certification stage or summary judgment stage." (Pl. Mem. at 23.)

█ It is well settled that "aftermarket purchasers who can trace their shares to an allegedly misleading registration statement have standing to sue under § 11 of the 1933 Act." *DeMaria v. Andersen*, 318 F.3d 170, 178 (2d Cir.2003). "The pleading requirement for Section 11 standing is satisfied by 'general allegations that plaintiff purchased pursuant to or traceable to [a] false registration statement.'" *In*

*re Marsh & Mclennan Cos. Secs. Litig.*, 2006 WL 2057194, at *33 (S.D.N.Y. July 20, 2006) (citation omitted); *accord Funke v. Life Financial Corp.*, 237 F.Supp.2d 458, 473 (S.D.N.Y.2002) ("If the shares were issued in the 1997 IPO, they may be traced to it, irrespective of when plaintiffs bought.").

█ While the Complaint alleges that Lead Plaintiff Beverlie Wissner purchased SCL common stock "pursuant to and traceable to the Prospectus as hereinafter defined," it fails, in fact, to define the term "Prospectus." (Compl.¶ 7.) Count I is, therefore, dismissed, without prejudice, because it fails to specify whether Ms. Wissner's stock purchase is traceable to a particular offering (Compl.¶¶ 23, 46, 107–18). *See In re Global Crossing, Ltd. Secs. Litig.*, 313 F.Supp.2d 189, 207 (S.D.N.Y. 2003) ("it is not enough that plaintiffs seek damages only for a class that has standing; at least one named plaintiff must be a member of that class-that is, a named plaintiff must have purchased shares traceable to the challenged offering").

█ Under Section 12(a)(2), a "claim may only be maintained by a purchaser who purchased [securities] in the public offering at issue rather than in a secondary market transaction." *In re Cosi, Inc. Secs. Litig.*, 379 F.Supp.2d 580, 588–89 (S.D.N.Y.2005). Plaintiffs' Section 12(a)(2) Claim relates to the sale of "Notes," not common stock (Compl.¶¶ 128–31), but none of the Named Plaintiffs are alleged to have purchased Notes in a public offering (Compl.¶¶ 7–10). "[B]ecause the plaintiffs fail to allege that they purchased the securities in a public offering, as opposed to in the aftermarket, their Section 12(a)(2) claim [in Count III is] dismissed," without

---

6. The Individual Defendants do not move for the dismissal for lack of standing with respect to Count II alleging violations of Section 11 as to the "Debt Offerings." (*See* Def. Mem. at 10–12.)

prejudice. *In re Sterling Foster & Co. Secs. Litig.,* 222 F.Supp.2d 216, 246 (E.D.N.Y.2002).[7]

#### (B) Section 11 Claim

■ The Individual Defendants argue that "Plaintiffs fail to allege that there was a single false or misleading statement in any of the challenged Registration Statements or Prospectuses." (Def. Mem. at 9.) Plaintiffs counter that, among other things, "[t]he Registration Statements and Prospectus incorporated by reference various SEC filings." (Pl. Mem. at 22.)

■ "To allege a claim under Section 11 of the Securities Act, a plaintiff need show that a registration statement: (1) 'contained an untrue statement of material fact'; (2) 'omitted to state a material fact required to be stated therein'; or (3) omitted to state a material fact 'necessary to make the statement therein not misleading.'" *In re Morgan Stanley and Van Kampen Mut. Fund Secs. Litig.,* 2006 WL 1008138, *6 (S.D.N.Y. Apr. 14, 2006) (quoting 15 U.S.C. § 77k); *see also DeMaria,* 318 F.3d at 175.

■ "[W]hile fraud is not a necessary element of ... a Section 11 ... claim, the Second Circuit has held that the heightened pleading standard of Rule 9(b) applies to these claims insofar as the claims are premised on allegations of fraud." *In re Axis Capital Holdings Ltd. Secs. Litig.,* 456 F.Supp.2d 576, 597 (S.D.N.Y.2006) (citing *Rombach v. Chang,* 355 F.3d 164, 171 (2d Cir.2004)). That is, Section 11 claims, such as those presented here, "that do rely upon averments of fraud are subject to the test of Rule 9(b)."

*Rombach,* 355 F.3d at 171. Here, the Complaint makes no attempt to differentiate the Count II Section 11 Claim from Plaintiffs' fraud claims in Counts V and VI (Compl.¶¶ 119–25, 134–48). *See In re Philip Services Corp. Secs. Litig.,* 383 F.Supp.2d 463, 481–82 (S.D.N.Y.2004). Accordingly, the Section 11 Claim "sounds in fraud" and must satisfy the particularity requirements of Rule 9(b), which are that the Complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach,* 355 F.3d at 170 (citations omitted).

The Section 11 Claim is dismissed because it fails to satisfy the first element of Rule 9(b)—*i.e.,* "specify the statements that the plaintiff contends were fraudulent." *Id.* While Plaintiffs argue in their brief that "[t]he Registration Statements and Prospectus incorporated by reference various SEC filings" (Pl. Mem. at 22), the Complaint appears to contain no such allegations. (*See* Compl. ¶¶ 23 (February 23, 2004 stock offering), 32 (May 4, 2004 Note offering), and 46 (December 12, 2004 or December 28, 2004 stock offering).) "Because plaintiffs cite no prospectus [or registration statement] ... actually at issue in this case, nor cite any specific statement alleged to be misleading, they do not meet the particularity requirement of Rule 9(b)." *In re Merrill Lynch Investment Mgmt. Funds Secs. Litig.,* 434 F.Supp.2d 233, 239 (S.D.N.Y.2006).

#### (C) Section 10(b) Claim

■ "To state a claim under § 10(b) and the corresponding Rule 10b–5, a plain-

---

**7.** Plaintiffs have withdrawn their Section 11 and Section 12(a) (2) Claims, but not their Section 10(b) Claim, against Durant. (Pl. Mem. at 22.) Because the Count I Section 11 Claim (relating to stock) and the Section 12(a)(2) Claim are dismissed on standing grounds, Plaintiffs have standing (only) with respect to the Count II Section 11 Claim (relating to the Notes) against Sherwood and O'Sullivan and with respect to the Section 10(b) Claim against Sherwood, O'Sullivan, and Durant.

tiff must plead that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir.2000): *see Herman & MacLean v. Huddleston*, 459 U.S. 375, 381–82, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) ("Section 10(b) is a 'catchall' anti-fraud provision ... [w]hile a Section 11 must be based on misstatements or omissions in a registration statement."). The Court finds that the Complaint does not adequately plead the elements of (1) falsity ("explain why the statements were fraudulent") or (2) scienter.

**Allegedly False Statements**

The Individual Defendants argue, among other things, that: "Plaintiffs' allegations fundamentally derive from the Company's decision to exit the ferry business and its accounting determination to write-down certain of its assets under SFAS 144." The Individual Defendants also say "Plaintiffs fail, however, to allege with the requisite particularity how the Company—let alone any Individual Defendant—was to have known the write-downs should have been taken earlier or the amount of any such earlier charges." (Def. Mem. at 14–15 (citations omitted).) [8]

Plaintiffs counter that, among other things: the "Complaint clearly sets forth which statements are misleading ... and specifies 'the date, publication and speaker of each of the alleged misstatements or omissions.'" (Pl. Mem. at 8 n. 5); "the Complaint specifically details reasons why

each statement was false, including allegations [of] specific GAAP violations which caused SCL's financial statements to be materially false and misleading" (*id.* at 11); and "the information provided by Plaintiffs' confidential sources are not only sufficiently particularized but are also consistent in supporting the overall scheme in the Complaint" (*id.* at 9 n. 6).

The Private Securities Litigation Reform Act ("PSLRA") and Fed.R.Civ.P. 9(b) require that Section 10(b) plaintiffs "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Stevelman v. Alias Research. Inc.*, 174 F.3d 79, 84 (2d Cir.1999) (citations and internal quotation marks omitted).

"Each of the misrepresentations alleged in the consolidated amended class action complaint were made in specifically identified financial disclosures ... or press releases discussing financial disclosures [identified by Plaintiffs]. Thus, plaintiffs have satisfied the first three prongs of the Rule 9(b) requirements." *In re Globalstar Secs. Litig.*, 2003 WL 22953163, at *5 (S.D.N.Y. Dec. 15, 2003). At the same time, except with respect to the Accounting Error Restatement, Plaintiffs have failed to plead with particularity the fourth prong of the Rule 9(b) requirements, namely, "how the statements were false or misleading." *In re Northern Telecom Ltd. Securities Litigation*, 1994 WL 455534, at *6 (S.D.N.Y. Aug. 22, 1994). With respect to this fourth prong, the Court separately analyzes (a) the Accounting Error Restatement, (b) statements relating to the $500

---

**8.** According to the Individual Defendants, the "Plaintiffs fail to specify *what* facts should have triggered an impairment analysis *at what point* or otherwise allege with any specificity how SCL's financial disclosures were

inaccurate. Plaintiffs offer no basis for their random assertion that SCL should have taken an impairment charge of 'at least approximately $50 million at the beginning of the Class Period.'" (*Id.* at 15 (citations omitted).)

million write-down, and (c) other alleged misrepresentations, as follows:

### (a) Accounting Error Restatement

■ As noted, the Complaint alleges that the March 24, 2006 Press Release announced that SCL had found "errors in the accounting for the release of accumulated foreign currency reserves related to [SCL's] sale of OEH shares," which resulted in a $10.3 million restatement of SCL's financial statements for the periods ending March 31, 2005, June 30, 2005, and September 30, 2005. (Compl.¶¶ 63, 70, 79.) "Although a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F.Supp.2d 474, 486 (S.D.N.Y.2004). That is, "the mere fact that ... statements were restated at all" is sufficient to establish falsity at the pleading stage. *In re Cylink Secs. Litig.*, 178 F.Supp.2d 1077, 1084 (N.D.Cal.2001).[9]

### (b) $500 Million Write–Down

■ The Complaint's central allegation is that SCL's financial statements overstated the value of SCL's assets (*i.e.*, ferries and containers) during the Class Period, in violation of SFAS 144. (*See* Compl. ¶ 1 ("The value of Sea Containers' ferry and container assets was materially impaired throughout the Class Period and such material impairments should have been recognized and recorded in much greater amounts during the Class Period.").) " '[T]he standard is whether the need to write-down [the asset] ... was 'so apparent' to [the defendant] before the announcement, that a failure to take an earlier write-down amounts to fraud.' " *In*

*re K-tel Intern., Inc., Secs. Litig.*, 107 F.Supp.2d 994, 1001 (D.Minn.2000) (citation omitted), *aff'd*, 300 F.3d 881 (8th Cir. 2002); *accord In re NTL, Inc. Secs. Litig.*, 347 F.Supp.2d 15, 26 (S.D.N.Y.2004) (The Complaint must "allege[ ] sufficient facts to support the assertions that material problems existed ... at the times the statements complained of were made.").

■ Plaintiffs have failed to plead with particularity how SCL's $500 million write-down establishes "why [Defendants'] statements were fraudulent," *i.e.*, how SCL's valuations of its ferry and container assets were false or misleading. *See, e.g., In re Serologicals Secs. Litig.*, No. Civ. A.1:00–CV1025, 2003 WL 24033694, at *10 (N.D.Ga. Feb. 20, 2003) ("The plaintiffs have not pled with particularity facts indicating that the defendants' review of the recoverability or failure to recognize an impairment in 1999 did not comply with FAS 121 [now 144]."). For one thing, in the March 24, 2006 Press Release, SCL explained the timing of the $500 million impairment—*i.e.*, that it followed the decision to sell the ferry business along with certain containers. (*See* SFAS 144 (long-lived assets should be tested for impairment if, among other things, there arises "a current expectation that *more likely than not* ... a long-lived asset will be sold or otherwise disposed of significantly before the end of its previously estimated life").) "The mere allegation that statements in one report should have been made earlier does not make out a claim of securities fraud." *Acito v. IMCERA Group. Inc.*, 47 F.3d 47, 53 (2d Cir.1995). Second, Plaintiffs cannot base its fraud claim on statements by SCL's CEO that the Company's earlier financial might have to be restated. *See In re Flag Telecom*

---

**9.** However, as noted in Section IV.C.2, below, Plaintiffs have not pleaded adequately scien-

ter with respect to the Accounting Error Restatement.

*Holdings, Ltd. Secs. Litig.*, 308 F.Supp.2d 249, 261 (S.D.N.Y.2004) (finding "simply too vague" a statement by former director of sales that "he and other employees had 'personally questioned ... the ethical boundaries' of the swap transactions"); *see also Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir.2001) ("A plaintiff cannot base securities fraud claims on speculation and conclusory allegations."). Third, the Complaint fails to state the basis for its book-value allegations and fails to specify the amounts by which the ferries and containers were allegedly overvalued. *See Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 116 (2d Cir.1982).[10]

### (c) Other Alleged Misrepresentations or Omissions

▇ The support for Plaintiffs' GE Claim is limited to vague statements that "there were a number of issues between GE and SCL concerning the operations of GE SeaCo" (Compl.¶ 22(e)), and allegations about SCL contained in pleadings from an unrelated lawsuit which are inadmissible, *see, e.g., Geinko v. Padda*, No. 00 C 5070, 2002 WL 276236, at *5–6 (N.D.Ill. Feb. 27, 2002). Plaintiffs do not plead with particularity that any Individual Defendant was aware, prior to May 10, 2005,

that the dispute with GE Capital would be arbitrated, or aware, prior to April 28, 2006, of the likelihood of an adverse result. *See, e.g., Hinerfeld v. United Auto Group*, 1998 WL 397852, at *7 (S.D.N.Y. July 15, 1998) ("The failure to anticipate the extent of necessary reserves, even if it amounts to mismanagement, is not actionable under federal securities laws.").[11]

▇ The Complaint also fails to establish falsity with respect to allegations that SCL did not disclose that its internal accounting function lacked "sufficient personnel resources and technical accounting expertise" to comply with GAAP. (*See, e.g.*, Compl. ¶ 38.) Beginning with its Form 10–K for 2004, SCL disclosed weaknesses in its internal controls. (*See* pages 3–4, *supra.*) And, "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim .... Only where such allegations are coupled with evidence of corresponding fraudulent intent might they be deemed sufficient." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir.2000).

### Scienter

The Individual Defendants argue, among other things, that: "Plaintiffs fail to

---

**10.** The Complaint's allegations regarding an $85 million container write-down are inadequate. The statements attributed to Confidential Source 5 are contingent ("SCL may have been overstating"), and fail, for example, to specify the amount by which the containers were overvalued, and at what times. (Compl.¶ 22(e).) The Complaint alleges that SCL's non-GE SeaCo. containers were overvalued by "at least $85 million during the Class Period" (Compl.¶ 102), but fails to specify the date of such overvaluation in relation to the Class Period. The Complaint also alleges, in conclusory fashion, that SCL's assets were overstated by "at least approximately $50 million at the beginning of the Class Period" (Compl.¶ 95), but fails to distinguish between ferry and container assets or to state the basis for its valuation. *See, e.g., Jacobson*

*v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 522 (S.D.N.Y.1977) ("although it is alleged that [defendant-issuer's] 10–K forms overstated [its] accounts receivable for each of the calendar years from 1970 through 1975, defendants are also entitled to be apprised of the approximate amount of overstatement involved").

**11.** Moreover, beginning with its Form 10–K for 2004, dated March 31, 2005, SCL disclosed disputes with GE Capital over GE SeaCo. (Compl.¶ 54), and on May 10, 2005, disclosed that the disputes were being arbitrated (Compl.¶ 56). *See, e.g., In re BellSouth Corp. Secs. Litig.*, 355 F.Supp.2d 1350, 1366–67 (N.D.Ga.2005).

plead any facts giving rise to a strong inference of scienter by any Individual Defendant. The Complaint sets forth no particularized allegations that any Individual Defendant was aware of, participated in, or benefited from any alleged fraud. Rather, the Complaint is replete with conclusory allegations of nothing more than purported mismanagement, supposed GAAP violations by the Company, and other classic indicia of an impermissible attempt to plead 'fraud by hindsight.'" (Def. Mem. at 3.) Plaintiffs' "allegations amount to no more than an assertion that the Company violated GAAP, ... which does not state a claim for securities fraud in the absence of particularized allegations of scienter." (*Id.* at 22.)

Plaintiffs counter, among other things, that they have pleaded scienter by alleging facts showing that the Individual Defendants had the "motive and opportunity" to commit fraud, and constituting "strong circumstantial evidence of recklessness." The Individual Defendants were motivated to commit fraud, Plaintiffs say, because "[i]f SCL had [properly] written down the value of the assets on its balance sheet during the Class Period, the writedown would have violated the Company's financial covenants with its lenders, SCL would have been unable to issue new debt to retire old debt and unable to complete the securities offerings during the Class Period." (Pl. Mem. at 20.) According to Plaintiffs, recklessness is established by "SCL's failure to take appropriate and timely impairment charges" during the Class Period, in violation of SFAS 144; "[t]he fact that SCL admitted on March 24, 2006 that it had to restate its financial statements for prior reporting periods"; "the writedown of $500 million in assets"; and "the statements made by the new CEO [MacKenzie] after the Class Period about the problems plaguing SCL during the Class Period." (*Id.* at 14–18.)

Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required [fraudulent intent]." 15 U.S.C. § 78u–4(b)(2); *see Novak,* 216 F.3d at 310. "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs. Inc. v. Makor Issues & Rights. Ltd.,* —— U.S. ——, ——, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007). That is, "a reasonable person [must] deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 2510. A plaintiff may establish a strong inference of scienter "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Comms.,* 493 F.3d at 99. "Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler,* 264 F.3d 131, 142 (2d Cir.2001). In order to plead "recklessness," plaintiffs must "specifically allege[ ] defendants' knowledge of facts or access to information contradicting their public statements." *Novak,* 216 F.3d at 308.

### Motive and Opportunity

The Complaint does not adequately allege that the Individual Defendants' motive and opportunity to commit fraud. "[T]he alleged desires to raise additional capital in a private placement or to maintain compliance with the financial covenants of a company loan agreement ... are ... inadequate to support an allega-

tion of intent to commit fraud." *In re Cross Media Mkting. Corp. Sec. Litig.*, 314 F.Supp.2d 256, 264–65 (S.D.N.Y.2004).

### Recklessness

 To establish recklessness, Plaintiffs must "specifically allege[ ] defendants' knowledge of facts or access to information contradicting their public statements." *Novak*, 216 F.3d at 308. And, generally, "[w]here plaintiffs contend defendants had access to contrary facts, [plaintiffs] must specifically identify the reports or statements containing this information." *Id.* at 309 (citation omitted).

██ Plaintiffs' allegations of recklessness, "even taken together, are insufficient to raise a strong inference of fraudulent intent." *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 664 (2d Cir.1997). The Complaint contains "no allegations that there were any internal reports that suggested that the failure to take an impairment charge earlier was an incorrect application of accounting principles" and "rose to the level of fraud." *In re Loral Space & Comms. Ltd. Secs. Litig.*, 2004 WL 376442, at *17 (S.D.N.Y. Feb. 27, 2004). While the Complaint alleges that SCL's senior management received regular reports on inventory (Compl.¶ 22(e)), it does not allege that such inventory reports suggested that SCL's ferries or containers were overvalued or the amount by which they were overvalued. *See Zucker v. Sasaki*, 963 F.Supp. 301, 309 (S.D.N.Y.1997)

("To plead facts establishing a strong inference that defendants engaged in accounting fraud, a plaintiff must specify the improper transactions, explain why such procedures used were improper, and estimate the approximate amount by which the company's finances were misstated."); *Schick v. Ernst & Young*, 808 F.Supp. 1097, 1102 (S.D.N.Y.1992). "Allegations that [defendants] should have known about [SCL's] financial state based solely on their executive positions are not enough to plead scienter." *In re NTL, Inc. Sec. Litig.*, 347 F.Supp.2d 15, 34 (S.D.N.Y.2004).[12]

██ Even assuming, *arguendo*, that GAAP violations under SFAS 144 were adequately pleaded with respect to the impairment of SCL's ferry and container assets, it is well settled that "allegations of GAAP ... violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim. Only where such allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient." *Novak*, 216 F.3d at 309 (citations and internal quotations omitted).[13] "[T]he size of the fraud alone does not create an inference of scienter," *In re WorldCom, Inc. Sec. Litig.*, 2003 WL 21488087, at *7 (S.D.N.Y. June 25, 2003), and "[m]ere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud," *Stevelman v. Alias Research. Inc.*, 174 F.3d 79, 84–85 (2d Cir.

---

**12.** Certain of the Complaint's allegations ("that there was not an annual review process to 'feel the pulse' of the shipping container assets," and that "SCL did not have an annual nor quarterly inventory review process in place to physically inspect inventory" (Compl.¶ 22(e))), would appear to contradict Plaintiffs' scienter argument. *See also Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982) ("section 10(b) was not designed to regulate corporate mismanagement").

**13.** *See also In re Tower Automotive Securities Litigation*, 483 F.Supp.2d 327, 340–41 (S.D.N.Y.2007); *Davidoff v. Farina*, 2005 WL 2030501, at *7, 14, 17 (S.D.N.Y. Aug. 22, 2005); *In re BellSouth Corp. Secs. Litig.*, 355 F.Supp.2d 1350, 1368–69, 1375–76 (N.D.Ga. 2005); *In re Serologicals Secs. Litig.*, No. Civ. A.l:00–CV1025, 2003 WL 24033694, at *10 (N.D.Ga. Feb. 20, 2003).

1999) (citation omitted); *accord Novak,* 216 F.3d at 309; *see In re Serologicals,* 2003 WL 24033694, at *12 ("The mere magnitude of the improperly overestimated value provides no indication of how or when the defendants became aware of its true value.").

The (only) restatement of SCL's financials appears to have involved the $10.3 million Accounting Error Restatement, and Plaintiffs have offered no facts supporting the allegation that the Accounting Error was the product of fraudulent intent. *See, e.g., In re DRDGOLD Ltd. Secs. Litig.,* 472 F.Supp.2d 562, 573 (S.D.N.Y.2007) ("The nature and magnitude of the restatement was not such that scienter can be strongly inferred.").

Finally, the Individual Defendants' scienter is not established through statements by SCL's non-Defendant CEO, after the Class Period, that the Company's earlier financial statements might have to be restated, *see In re Flag Telecom Holdings, Ltd. Secs. Litig.,* 308 F.Supp.2d 249, 261 (S.D.N.Y.2004) ("statements made by the Director are simply too vague to establish" defendants' scienter), or based upon the timing of SCL's write-downs soon after the original CEO's resignation, *see In re BISYS Secs. Litig.,* 397 F.Supp.2d 430, 446–48 (S.D.N.Y.2005) ("absent any alleged facts linking the two resignations and the alleged fraud, the resignations ... do not support an inference of conscious misbehavior or recklessness") (collecting cases).[14]

### (D) Control Person Claims

Because the Control Person Claims are "necessarily predicated on a primary viola-

tion of securities law, ... these secondary claims must also be dismissed." *Rombach v. Chang,* 355 F.3d 164, 177–78 (2d Cir. 2004).

### (E) Motion to Amend

Plaintiffs request an opportunity to amend the Complaint "[i]n the event that the Court deems the claims against the Individual Defendants insufficiently pleaded ...." (Pl. Mem. at 25 n. 16.) The Individual Defendants counter that "[h]aving rested on their Complaint, itself an amended and consolidated pleading, without identifying any additional factual allegations that might cure the numerous deficiencies identified herein, Plaintiffs' boilerplate request should be denied." (Def. Reply at 10 n. 10.)

The October 4, 2006 amended Complaint was filed for the purpose of consolidating the various underlying actions prior to the Individual Defendants' motion to dismiss. (*See* Case Management Plan, dated Oct. 16, 2006.) "Plaintiffs whose complaints are dismissed pursuant to Rule 9(b) [as here] are typically given an opportunity to amend their complaint." *Olsen v. Pratt & Whitney Aircraft, Div. of United Technologies Corp.,* 136 F.3d 273, 276 (2d Cir. 1998); *accord Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48–51 (2d Cir.1991). Plaintiffs will be given one **final** opportunity to amend the Complaint by October 15, 2007.

### V. Conclusion and Order

The Individual Defendants' joint motion [44] to dismiss the Complaint is granted

---

**14.** Because the Complaint does not adequately plead (1) falsity or (2) scienter, the Court need not address the Individual Defendants' arguments contesting materiality and loss causation. *See Ato Ram, II, Ltd. v. SMC Multimedia Corp.,* 2004 WL 744792, at *6 (S.D.N.Y. April 7, 2004) ("Because plaintiff did not adequately plead the element of scienter, I need not address defendants' other arguments concerning [plaintiff's] failure to plead the remaining elements with particularity.").

without prejudice. Plaintiffs' final amended complaint must be served and filed no later than October 15, 2007.

Counsel are requested to appear at a status/scheduling conference with the Court on October 19, 2007, 2007, at 10:30 a.m., in Courtroom 14A, 500 Pearl Street, New York, New York. **The Court directs the parties to engage in good faith settlement negotiations prior to the conference with the Court.**